We'll start with 24-6241, United States v. Reed, I'm just guessing at how to pronounce your name, Toronjo? Pretty close? Okay. What's really the pronunciation? Toronjo. Toronjo. You can call him Judge Hertz. All right. Can everyone hear me? Yes. Okay. Good morning. Parent Toronjo, on behalf of the appellant, Tyler Reed. This federal child pornography case began with a local investigation into stolen farm equipment. After arresting Mr. Reed for possession of a flatbed trailer that, during a traffic stop, police determined had been reported stolen, officers seized and searched his iPhone pursuant to a fatally overbroad warrant, discovering pictures and videos of child pornography. The warrant to search Mr. Reed's iPhone was unconstitutional because it authorized a search of the whole contents of the phone for evidence of possession of stolen property of any value at any time, even though officers were investigating the theft of five specific pieces of stolen farm equipment that went missing over a discrete two-month period. Because the warrant failed to employ the specificity available and authorized a search that exceeded its probable cause foundation, the search of the iPhone violated Mr. Reed's Fourth Amendment rights and suppression is required. I first want to turn to the particularity requirement. So counsel, can I ask you about the notice that you filed? So are you conceding those other issues? No, Your Honor. The notice was merely to notify this court that I wanted to focus on this issue, but I'm happy to answer any questions that the court might have on the other issues we've  Okay. So on the particularity, is it facially overbroad because it lacks a temporal limitation? Is that your principal argument? Yes. I think there are two components to our argument. First, that it lacks particularity because a warrant does not employ the specificity available. So it's not limited to the two-month period, and it's not limited to the five tractors and trailers that were under investigation. So that's the particularity component of our argument. But because of that lack of specificity, the warrant also exceeds its probable cause foundation. At best, given a generous reading of the affidavit, the affidavit connects the phone to the theft or possession of the three tractors and two trailers that were taken over a two-month period. But the warrant allows for a search of possession of any stolen property of any value at any time, which is outside the scope of the probable cause that the officers had. How long had the defendant been using this vacant lot? The owner let him use it. Is there something in the record indicating when their first conversation was? Your Honor, we looked to the affidavit for that, and the owner of the field didn't say when he started using it, but he did say when he started putting equipment on the field, which is in the middle of the two-month period. So the lease of the field, according to the affidavit, doesn't actually extend the two-month period at all. And this Court's cases make clear that when officers have information to specify a warrant, to make it more particular, they have to use it. And that's this Court's case in Leary. And here, they failed to employ that specificity available. What if the warrant could have allowed them to look for an earlier period, but in fact that didn't eventuate? So the warrant may be broader than it should be, the language, but in fact the search didn't go beyond those five tractors for two months. First of all, is that correct factually that the search didn't go beyond it? And if that is correct factually, what does that do with respect to suppression? Thank you, Your Honor. That's a good question. So it's irrelevant whether the officers in fact searched beyond the scope of the warrant here, given the limited nature of the issues on appeal. The government has waived any reliance on an exception to the exclusionary rule, like the good faith exception. So that question about how far did the search actually go, that's a question that goes to good faith. And here, where the government— No, is that true? There are no cases saying, well, the warrant allowed them to search this as well. There was an improbable cause to search for that. But they in fact didn't go beyond the scope of what they should have been allowed by this warrant. Yes, Your Honor. There are cases talking about that, but only in the good faith context, because that's where it's relevant. So how far the officers actually understood the warrant to go and how far they in fact searched are questions that go to good faith, whether they reasonably understood the warrant as limited to a particular offense, and whether they in fact did that. So those cases don't get at the threshold question, which is how much specificity is required in the warrant. So just because the officers didn't go beyond here doesn't mean that the warrant was particularized. And that question gets at good faith. Some of what your argument—what's intention, maybe you can help me with this—is we're supposed to look at warrants for practical accuracy, not hyper-technicality. And on the other hand, we have this requirement that you're relying on, that if there's information known, it should be included. How do those two principles fit together in this case in your favor? I think that this case is a good example of a very simple investigation. So we don't have a complex crime, right? The trailers were stolen. They were tracked to a field. They were all found in the same place, and they were tied to Mr. Reitz. This is not a very complicated investigation and not a long period of time. And so this court has made clear that the nature of the investigation and the offense are what determines how much information needs to be in the warrant. And so this court doesn't need to say temporal limitations have to be used in any theft case. This court doesn't have to say that. But given the allegations in the affidavit and what is and what isn't in the affidavit, it's very clear that temporal limitations should have been used as well as listing the tractors and trailers under investigation. So the scope of the ruling here can be quite narrow, and I think it's directly supported by Leary and this court's cases on particularity and overbreath. Let me ask you a follow-up to my colleague's question, and that is, is the issue here just a simple, common-sense question of, is this an action that was discreet, a one-time-only affair within this two-month window that all the officers arguably had probable cause to believe is that Mr. Reid had stolen five tractor-trailers? Much like in Armendariz, the majority characterized the investigation as being a single event at a single time. Is that it, whether or not it's an ongoing crime or an incident that takes place discreetly? And let me ask you a compound question. Okay. Okay. So, and if that's the case, borrowing on my colleague's question about common-sense and practicality, if I sell, if the police know that I sell marijuana to you and to Ms. Berry, does that mean, on January 2nd, does that mean that the law enforcement doesn't have probable cause to believe that I have sold marijuana before that? Mm-hmm. That they can't look at me, investigate the day before or the year before? Because all they know is that I sold marijuana on a particular day at a particular time, and it's unfair to say that this is an ongoing crime like child pornography and that kind of thing. Okay. So, first question is whether the continuous versus discreet nature of the offense is determinative. I think it's one of the things that has to be considered, and this court has said you look at the nature of the crime in determining how much specificity is required. So I think that's very clear here. And here, unlike drug trafficking, given what's in the affidavit, and again, this court doesn't have to hold that every possession or theft of farm equipment is a discreet crime, but what is in the affidavit describes a discreet crime, obviously. We have a start date and an end date, two months. When you say discreet crime, there are at least five different incidents, right? Right. We know it's a, we basically know it's a closed universe. So the affidavit contains no allegation. What do you mean we know? Looking at the affidavit, there are no allegations in the affidavit that say, oh, we had other stolen tractors in this area, and we haven't figured out who stole them. That might have supported a reasonable inference that this was a bigger crime than those five pieces of equipment. So taking Judge Becker's hypothetical, if there were five occasions in which undercover officers had purchased marijuana from someone, you could only assume that those, you had sold marijuana? I think drug trafficking is different in kind from the offense at issue here. So drug trafficking, we're talking about small transactions with many, many people that happen relatively continuously. So if you have probable cause to believe that someone's engaged in drug trafficking, it's much more reasonable to think that they're going to be engaged in continuous, small transactions that go unnoticed or unreported. Here we've got really expensive pieces of equipment that are huge. They all were reported stolen. And it's a far less reasonable inference to think that there were a bunch of other tractors that the officers hadn't found or hadn't been reported stolen at the time. And so the theft, as alleged here, is quite different from drug trafficking. It's not a continuing offense where it's reasonable to think that there would be a bunch of transactions that just went unnoticed or were happening constantly. These are huge pieces of equipment, and they're valuable. So the fact that the affidavit doesn't include any allegations that suggest there were any other tractors missing at this time, that Mr. Reid wasn't seen with any other tractors or trailers besides these five pieces, and there's no allegations like, in my training and experience, I know that people who steal this type of equipment have a much larger inventory than is reported stolen, or it's a continuous thing. The allegations in the affidavit aren't there. Those allegations aren't there. What do we do about the dates in the affidavit? There are specific dates in the affidavit, but they're not in the warrant. So how should we be thinking about those dates? I think those dates needed to be in the warrant. So I think that given the nature of this crime, the pieces of equipment needed to be listed in the warrant as well as the dates, or at minimum, restricting the warrant to the first date or just before the first date where the first one went stolen and the date when the phone was seized. I mean, our cases are very clear, I think, that the warrant needs to be tied to the offense, the specific offense. It was here, and it seems like you're suggesting the warrant needs to explain how the offense was committed. Leary supports the argument that if there is a way to do a transactional limitation or include information like a temporal limitation, it does actually have to be in the warrant, not just the affidavit. And that's because the particularity has to be in the warrant, not a supporting documentation. So in Leary, it was a single transaction that occurred over a period of time, and this court said that the warrant needed to be limited to that transaction and that period of time. This is about the same here. So while it's not transactions, they're basically thefts that occurred in a specific period. Did Armendariz change our law at all? I don't think so. I think it's acknowledging that Leary has been the law since 1988 and that specificity, that a warrant must be as specific as it can be under the circumstances. I think it's just an acknowledgment of that, especially in the phone warrant context. So I don't think it changes the law, but I think it makes it very clear. In the search of the phone, if the warrant had just been limited as you suggest, how would the search of the phone have been different from what it actually was? What did they do in searching the phone? This is before the second one. That would not have been allowed under the narrower warrant that you suggest was the only one possible. Well, first, Your Honor, I need to emphasize that that question gets at the reasonableness of the search, not the threshold question. But taking that on its face, the search would have been quite different. So they wouldn't have gone back beyond the May 2023 date. They wouldn't have gone back through files that existed beyond that, and they clearly did. They did do that. Yes, I think so, because the indictment here goes back to 2018. But that would have been a record for the government to make in terms of the reasonableness of its search or entitlement to the plain view exception or entitlement to the good or maybe even inevitable discovery. But the government didn't try to make that record. They didn't raise any of those exceptions to the exclusionary rule, and it was their burden to do so. So this court can't rely on that factual record that wasn't made. Seeing no further questions, I'll reserve the remainder of my time. Thank you, Your Honors. May it please the Court. My name is Julia Berry. I will be arguing on behalf of the United States this morning. I was prepared to address all four issues this morning, but given Ms. Toringau's emphasis on the second issue in this appeal, I will start there. The district court correctly concluded that the search of Mr. Reed's iPhone was sufficiently particular and not overbroad. This court has long held that a search of a cell phone may be sufficiently particular where it seeks to obtain evidence of a specific crime or specific types of material, and the warrant here explicitly limited the search to evidence substantiating the crime of possession of stolen property. The United States is aware of no case, and Mr. Reed cites none, holding that search warrants must always include temporal limits. I don't think that's what the appellant is arguing. I didn't understand the appellant to be arguing for a per se rule, but that a temporal limitation was necessary to make this warrant valid. I understand that argument today, Your Honor. I believe in the briefing there was an indication that Leary had stood for the proposition that when there is the potential to narrow something to a specific time period, it must be included. Well, could you respond to the argument that we're hearing this morning, assuming it's different than what was in the brief, that the temporal limitation was required on the fact of this case?  I do think, going to Judge Bacharach's question, that a lot of this case hinges upon whether we're talking about discrete versus ongoing crime. And I would state that the facts in this case clearly put it in the ongoing category. Contrary to Ms. Toringau's representation that we have no evidence that Mr. Reed was involved with others, we know that Mr. Reed met with a man on a motorcycle with the suspected stolen trailer and removed a tracker warrant. So we know necessarily that others were involved, just as there would be in a drug transaction. The two-month period is key here. We know that there are at least five pieces of evidence with which Mr. Reed is associated, but there very well could be others. We are not talking about a seconds-long attempted assault as we were in Armendariz. And I think that's a key distinction and one that I highlighted in my response to the 28-J letter. Can I probe that a little bit, Ms. Berry?  With regard to Armendariz. So the discussion that I think both of you are homing in on is pretty limited. I think we're talking about a couple of sentences, but I wonder if they're particularly significant sentences, because in Armendariz, I don't read the majority to be saying that it is, that there was necessarily an inability to have a reasonable basis to go beyond the day in question that Ms. Armendariz was at the Chinook Center protest. But what the majority focuses on is the fact that the affidavit, quote, did not explain why all data included in these keywords would be relevant to the alleged attempted assault. And that's after noting that the warrant had said that the keywords would be relevant, regardless of the time period in which they occurred. So you might, we might speculate on that the police had probable cause to believe that Mr. Reed had been stealing tractor-trailers before this two-month period. But I think the majority in Armendariz is questioning whether or not we can just assume that or whether or not there has to be something in the affidavit, as Judge Rossman was alluding to, to say that, that there is a reason to believe, or probable cause to believe, that he has been stealing tractor-trailers for a long time. It's just now that he got this leasehold, you know, in order to place these tractor-trailers there. Yes, I understand that point, Your Honor. And there are some contexts in current warrants where we do include that, what I call hero paragraph, where the affidavit says, based on my training and experience, this is the case. But based on this court's jurisprudence, not every warrant that this court has upheld has had that language. I don't believe that anything in Palms or Burgess or Brooks indicates as much. I think part of the tension in Armendariz was that the affidavit pertained to an investigation that was larger than the discrete crime of attempted assault. And I think that the majority was trying to navigate that tension of this social media exploration being used as a pretext to find evidence of other crimes when, in fact, the warrant itself was keyed to attempted assault. Your Honor, if there are no further questions on that issue, I will move to the remainder of the issue so that we can preserve those arguments. The district court correctly concluded that officers with El Reno PD had reasonable suspicion to stop Mr. Reed and that officers did not impermissibly prolong that stop. Officers had a particularized and objective basis for suspecting that Mr. Reed was in possession of a stolen trailer under the totality of the circumstances. Mr. Reed was leasing the field in which officers found that stolen property. Witness reports of a man matching Mr. Reed's description driving a red truck who stored equipment in that field was also within the officer's purview. Officers observed Mr. Reed and the red truck at an address at which a stolen tractor was located before it was moved to the leased field. Mr. Reed attempted to evade law enforcement moments before the stop as evidenced by that encounter with the man on the motorcycle that I indicated previously in my remarks. Mr. Reed gave vague answers to Officer Dillingham when he was asked about the trailer and he failed to produce any proof of ownership regarding the trailer. Sherry, what do you mean that he gave vague answers? I don't know that if someone came and stopped me on my way home and said, you know, do you have the title to my car, and I said, well, I know I have it someplace, I don't, I don't, you know, you can call me forgetful, you can call me disorganized, but I don't know that you can call me vague. Well, to be clear, Your Honor, and I'll address the question in a moment, I was actually addressing the vague answers when he is initially approached by Officer Dillingham, not after he is removed from the vehicle. So, so I believe initially he was giving vague answers and I don't know that there's any dispute about that, where Officer Dillingham is asking him about the trailer and he's saying, what do you mean, why do you want to know, and then reveals that it's on his side of Oklahoma. I also believe that Mr. Reed's reliance upon Rodriguez is misplaced because officers never diverted from the purpose of the stop, which the district court correctly found was investigating that stolen trailer, and they hadn't completed routine traffic measures at either of the Rodriguez moments that Mr. Reed identifies. Ms. Berry, I'm sorry to interrupt you, I know you're walking through the other arguments that were made in the appellant's brief and I appreciate your effort to preserve that record. Certainly. But I did have another question that I wanted to ask you on the search of the phone. One of the things I'm struggling with is how to read the affidavit and the warrant together and which way it cuts in terms of resolving this question. And the, you know, one of the reasons that Leary seemed to suggest that the warrant was over, in addition to being overbrought on his face, was flawed, was because there was information that was available that could have been included, and the way that Leary identified that was by pointing to what was in the affidavit. Why don't we have exactly the same situation here, where, you know, we don't have to speculate about what it is that the government may have known, rather we look at the affidavit, we see a specific temporal frame, but it's missing from the face of the warrant. So can you help me understand how to reconcile all that and which way it cuts? Certainly, Your Honor. I think Leary is distinguishable for several reasons. And first, as a note, this is necessarily a fact-specific inquiry. And under the totality of the circumstances, I believe we're in a different space here. Leary concerned the evidence regarding one particular piece of equipment that was suspected to have been sold to China, basically, and it involved the search of an expert control firm. Necessarily, in that context, the search warrant provided absolutely no limitations because it allowed for an expansive search regarding, again, one piece of information. In contrast here, Mr. Reed possessed five tractors over the course of months. I think this clearly puts us in the purview of Palms and Burgess, where we don't have temporal limitations. And I don't believe that Leary created a bright-line rule requiring that any time a temporal limitation is available, it must be included. It was something that the opinion noted as consideration. And I think you're getting to exactly where I'm stuck. So if there isn't a per se rule, then what is the principle that guides us in determining whether the question about whether the information was available is answered? It is available. It's in the affidavit. Are you suggesting that under the circumstances of this specific type of offense, no temporal limitation was required? Yes, Your Honor. Okay. And tell me, I'm sorry if I'm missing this, but tell me one more time why that is so. That is so because this is the type of ongoing crime involving multiple transactions that puts it within the purview of human trafficking, drug trafficking, and child pornography cases. You mentioned the key words in the search that were used by the officers. Do you remember what those, can you tell me what those key words were? Certainly, Your Honor. I believe, well, I won't recite them all from memory, but I think some of them that were particularly concerning to the majority were words like pig, which could regard a farm animal or a derogatory student. In this case. Oh, in this case. I'm sorry, Your Honor. No, in this case, I don't believe that there were key word searches included. Oh, okay. I'm sorry. I didn't remember that, and I thought one of you two mentioned key words, so I got confused. Okay. Key words were at issue in Armendariz, and those key words were very broad and did not in fact limit the scope of the warrant there. What is your best case or cases that help us understand how to view a specific offense as ongoing as opposed to discreet? I believe the cases cited in the government's brief, Your Honor, that would be Palms chiefly in addition to Burgess, Brooks, and Burke. United States v. Christie is also helpful, though I do acknowledge that there was a temporal limit of sorts in that. It was an expansive temporal limit. So, does ongoing conduct just not have any temporal limit? I don't believe so, Your Honor, and to date, the court has not placed a limit on that conduct, otherwise we wouldn't have decisions like Palms and Burgess, which are, in Palms, it's actually less specific than we have here. Here we have evidence of a specific crime, whereas in general, we're just talking about human trafficking writ large in Palms. But why couldn't the temporal limitation have just been the same that was ultimately in the indictment? Because the indictment was actually predicated on a second warrant that was later obtained. So, the indictment is entirely talking about a separate search warrant. If there are no further questions on the issue, I'd just like to preserve my remaining arguments. Regarding the multiplicity argument, I do want to emphasize that Mr. Reed has waived this challenge. Federal Rule of Criminal Procedure 12B3B2 explicitly states that an allegation as to multiplicity must be raised pre-trial. Wait, but how would he know from the indictment that the images being used for the two charges were identical? He could not have raised that issue pre-trial. Well, one of the allegations that the appellant raises is that the date range is necessarily the same and that on its face, it is clear that that indictment implicates multiplicity. If that is the case, that issue should have been raised pre-trial and it is explicitly enumerated in Rule 12B. That may be true. I'll spot you that. But here, the prosecution could have resolved that problem by telling the jury, these are the images that were distributed, these were the ones that were possessed, and so there'd be distinct factual bases for the two charges. And the defendant would not know that until the close of evidence. Am I missing something? Your Honor, I respectfully disagree based on the facts of this case and the rule specifically. I do believe if we reach the plain error aspect of the argument, then we don't have a factual dispute that's been raised such that the district court could have raised it. The point of Rule 12 is to allow the district court, who is the fact finder, to vet these multiplicity issues in advance. A facial challenge to the indictment on multiplicity grounds could easily have been cured with a bill of particulars, for example, that would have enumerated the specific images of the court. When did the defendant first mention multiplicity? On appeal. Okay. And is your argument just that we don't review multiplicity challenges for plain error after the 2014 amendments? Is that? If they are not raised pre-trial, yes. If they are not raised pre-trial? Yes. The defendant, oh, you've got to concede that sometimes you would not know. It could have been raised at the close of evidence, saying, look, the prosecution has not distinguished between the two claims. May I answer? I see that I'm out of time. I'll let you, yes. So, under the facts of this case, I don't think that there is an excuse. There was ample opportunity at the close of evidence, it was not raised. But beyond that, if the allegation... You said it always has to be raised pre-trial. I would think there are issues regarding multiplicity that could not be raised until you saw what evidence was presented. As I read the rule, that is what the rule indicates. I will not foreclose the possibility that in some world, on some particular facts, there could be an issue that would be appropriate. If there were myth multiplicity here, what would be the remedy? The remedy would be re-sentencing on one of the two counts. It would, I'm assuming, since those are concurrent sentences of 210 months, the only difference would be the special assessment. And because two special assessments, excuse me, the special assessment and the restitution obligation under the GBTA. So I do acknowledge that that would, it would save Mr. Reed a nominal amount of money. Can I ask two questions? Just one to follow up. Why wouldn't the remedy be to vacate the multiplicitous convictions rather than to assume that both are valid and we're going to just remand for re-sentencing? It's a fair point, Your Honor. I do think we would reach the same result by vacating one of those convictions, yes. Okay. Can I ask my second question? Yes. Now, I want to give you a chance to respond to what defense counsel said in the reply brief on your Rule 12 argument. And she points out, I think accurately, that in the Wendy Uric case, we did address multiplicity. We applied plain error, and that was about six years after the 2014 amendments. Does the Wendy Uric case foreclose your argument? No, Your Honor. I pulled the briefs in that case, and actually the United States did not argue that the issue was waived. Effectively, the United States waived their waiver argument, and so it was not properly before the panel. All right. Thank you. Thank you. Thanks, Judge. I just want to make one point, just that the allegations in the affidavit here give rise at best to probable cause to search for the evidence of five pieces of equipment over the two-month period. That there might have been other equipment involved is entirely speculative given the allegations in the affidavit and what was in the affidavit versus what wasn't. Speculation does not equate to probable cause. The affidavit describes five pieces of equipment found together over two months. There was no other equipment reported stolen in the area according to the affidavit. There are no allegations about that. Mr. Reed was not seen with other unidentified equipment besides these five pieces. That's not in the affidavit. Your time's up. Yes, my time's up. Thank you. We ask for reverse.  Thank you, counsel. Case is submitted.